**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNIFER MONTES DE OCA,<br><br>                    Plaintiff,<br><br>v.<br><br>SAPUTO CHEESE USA, INC., et al.<br><br>                    Defendants. | Case No. 1:24-cv-01519 JLT EPG<br><br>ORDER **GRANTING** MOTION TO REMAND<br><br>(Doc. 7) |

In this action brought under California's Fair Employment and Housing Act ("FEHA") Cal. Gov. Code §§ 12940 *et seq.*, and various provisions of the California Labor Code, Plaintiff moves to remand arguing that this Court lacks subject matter jurisdiction because (1) there is a lack of complete diversity between the parties due to a non-diverse defendant who was properly joined and (2) there are no grounds for federal question on the basis of the collective bargaining agreement ("CBA"). (Doc. 8 at 2.) For the reasons set forth below, the motion to remand (Doc. 7) is **GRANTED**.

## I.   BACKGROUND

Jennifer Montes De Oca brings this action against Saputo Cheese USA, Inc. ("Saputo"), her former employer, and Bill Stafford, her former manager, based on claims of discrimination, failure to accommodate, retaliation, and wage-and-hour violations under California law. (Doc. 8

1

at 1.) Plaintiff is a citizen of California, Defendant Stafford is a citizen of California, and Defendant Saputo is incorporated in Delaware with a principal place of business in Illinois. (*See id*.; Doc. 1 at 2; Doc. 1-2 at 8.) At all times relevant to the case, Plaintiff was employed by Saputo, was part of a bargaining unit represented by Teamsters Union Local 517 and worked in a role that was covered by the CBA. (Doc. 13 at 7; *see also* Doc. 1-3 at 2–3.) The CBA encompasses the period from July 4, 2022, through July 4, 2027. (Doc. 1-3 at 3.) All allegations set forth in the complaint occurred during the operative period of the CBA. (*See* Doc. 1-2 at 9–11.)

The facts alleged in the complaint are as follows: Plaintiff started employment with Saputo in or around 2017 as a production employee. (Doc. 1-2 at 9.) In 2021, Plaintiff became pregnant and took time off work due to prior pregnancy complications. (*Id*.) On July 5, 2022, Plaintiff returned to work upon the conclusion of her maternity and medical leave. (*Id*.) Before returning to work, she asked Human Resources ("HR") for accommodations to express milk during the workday. When she returned, Saputo instructed her to use the bathroom to express milk in violation of Cal. Lab. Code §1031(b), which provides that "[a] lactation room or location shall not be a bathroom." (*Id*.) On or around July 7, 2022, Plaintiff filed a complaint with the U.S. Department of Labor regarding Saputo's failure to provide a proper lactation room. (*Id*.)

On July 11, 2022, Saputo instructed Plaintiff to use a training room as a lactation room moving forward. (*Id*.) However, it was difficult to ensure her privacy in the training room because she could not lock the door and the room was connected to a server room, which could only be accessed by going through the training room. (*Id*.) Furthermore, the training room locked after 5 p.m. which made it difficult to access after that time. (*Id*. at 10.) On other occasions, Saputo instructed Plaintiff to use the conference room, but the room had no lock which meant Plaintiff could not express milk in private. (*Id*. at 10.) On July 20, 2022, Saputo told the Plaintiff to express milk in a shower tent set up in the shower stalls of the locker room. (*Id*.) Again, Plaintiff claims that the shower tent in the locker room was deficient because it had no door, the curtain did not close properly, there was no sink access, there was no air conditioning, and insects were coming in from the ceiling. (*Id*.) Finally, Plaintiff states that although Saputo provided a

refrigerator, it did not work properly because of a faulty electrical outlet. (*Id.*) Plaintiff promptly raised these issues to Saputo, but Saputo was unwilling to resolve them. (*Id.*) Then, due to her pregnancy-accommodation requests, manager Bill Stafford allegedly retaliated against her by reassigning her to the night shift. (*Id.*)

On or around July 2023, Plaintiff became pregnant again and requested maternity-sized uniform pants, which were not provided until a month later. (Doc. 1-2 at 11.) This led Plaintiff to take a month's leave of absence until the pants were provided. (*Id.*) Towards the end of Plaintiff's pregnancy, her doctor issued a restriction that she could not work overtime. (*Id.*) When her supervisor learned of this restriction, he called her "useless." (*Id.*) As a result of the alleged mistreatment and retaliation, Plaintiff experienced stress, anxiety, and humiliation. (*Id.*) On July 2, 2024, the Equal Employment Opportunity Commission issued a finding that Saputo had discriminated against Plaintiff by denying her access to a proper lactation room. (*Id.*) On September 24, 2024, EEOC issued a notice stating that reconciliation efforts between Plaintiff and Saputo were unsuccessful and issued a "right to sue" letter to Plaintiff. (*Id.*) Plaintiff eventually resigned from her position, but it is unclear when. (*See id.* at 15.) Plaintiff alleges she was subject to "constructive termination" because no reasonable employee would be expected to endure Saputo's "egregious" conduct. (*Id.*)

On October 16, 2024, Plaintiff filed the present action in the Superior Court of California, County of Tulare. (Doc. 1-2 at 7–19.) In her complaint, Plaintiff asserts six causes of action, all against Defendant Saputo and only one against Defendant Stafford: (1) failure to provide an adequate lactation room and lactation accommodation policy under Cal. Lab. Code §§ 1030–1034; (2) failure to provide reasonable accommodation for conditions related to pregnancy under FEHA, Cal. Gov. Code §12945; (3) discrimination on the basis of sex under FEHA, Cal. Gov. Code § 12940; (4) whistleblower retaliation as against both Saputo and Mr. Stafford under Cal. Lab. Code § 1102.5; (5) wage-and-hour violations under Cal. Lab. Code § 226.7; and (6) waiting time penalties under Cal. Lab. Code §§ 201–203, 226.7. (*See* Doc. 1-2 at 12–17.) Plaintiff seeks "compensatory, consequential, general and special damages" in amounts of not less than

3

$10,000,000[1] for each of Plaintiff's second, third, and fourth causes of action; penalties for Plaintiff's fifth and sixth causes of action; attorney's fees and costs; and punitive damages. (*See* Doc. 1-2 at 17–18.)

On December 11, 2024, Defendants removed this case to federal court based on diversity of citizenship arguing that the non-diverse Defendant, Bill Stafford, does not ruin complete diversity because he was fraudulently joined. (Doc. 1 at 12–17.) Alternatively, Defendants removed this case based on federal question arguing that claims two, three, and four are inextricably intertwined with the terms of the CBA and therefore preempted by federal law. (*Id*. at 8 (citing *Allis-Chambers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)). Defendants further argue that the remaining claims are removable based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367. (Doc. 1 at 11.) On January 10, 2025, Plaintiff filed a motion to remand, arguing that this Court lacks subject matter jurisdiction because (1) there is incomplete diversity among the parties as Defendant Stafford has the same citizenship as the Plaintiff and he was not fraudulently joined; and (2) the state law claims are neither substantially dependent on the CBA, nor require an interpretation of the CBA, therefore no federal question exists. (Doc. 7; Doc. 8 at 2.)

## II.    LEGAL STANDARD

A defendant may remove a lawsuit filed in state court to federal court if the federal court has original jurisdiction over the suit. 28 U.S.C. § 1441(a). Removal is proper when a case originally filed in state court presents a federal question or where there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000. *See* 8 U.S.C. §§ 1331, 1332(a); *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). A plaintiff may challenge the removal by filing a motion to remand, and "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls on the party invoking the

---

[1] The complaint states "in an amount of no less than $10,000,000" (Doc. 1-2 at 17), but Defendants characterized this as if Plaintiff was requesting "amounts of not less than $10,000." (Doc. 1 at 16.) It is unclear whether Plaintiff meant to request not less than 10 million or 10 thousand for each of her Second, Third, and Fourth causes of action. Nonetheless, the complaint states 10 million. (Doc. 1-2 at 17.)

statute." *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (citations omitted). If there is any doubt as to the right of removal, the case should be remanded to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

**III.   DISCUSSION**

**A.      Diversity of Citizenship & Fraudulent Joinder**

Defendants argue that the non-diverse party, Mr. Stafford, is fraudulently joined and that his citizenship should be disregarded. (Doc. 1 at 13–15.) "In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citations omitted). Fraudulent joinder may be established by showing that the plaintiff cannot establish a cause of action against the non-diverse party in state court. *Id*. (citations and quotations omitted). If the defendant shows that the non-diverse party cannot be liable on any theory, the defendant will prevail. *Id*. (citations and quotations omitted). "But 'if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the [non-diverse] defendants, the federal court must find that the joinder was proper and remand the case to the state court.'" *Id*. (quoting *Hunter*, 582 F.3d at 1046). There is a "general presumption against [finding] fraudulent joinder" and a defendant invoking diversity jurisdiction on this basis faces a "heavy burden" to prove fraudulent joinder by clear and convincing evidence. *Id*. (quoting *Hunter*, 582 F.3d at 1046).

The fraudulent-joinder dispute here involves whether an individual can be found personally liable under Cal. Lab. Code §1102.5. Defendants contend that the sole claim raised against Mr. Stafford, namely, whistleblower retaliation under § 1102.5, has "no colorable ground" because such claim can only be brought against an employer not an individual. (Doc. 1 at 13–4.) The statute provides in relevant part that "[a]n employer, *or any person acting on behalf of the employer*, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency . . ." Cal. Lab. Code § 1102.5(b) (emphasis added). The statute was amended in 2014 to include "or any person acting on behalf of the employer" instead of referring

solely to an "employer." *Shipp v. Wal-Mart Assocs., Inc.*, No. 2:24-cv-02876-DAD-JDP, 2025 WL 1248745, at *3 (E.D. Cal. Apr. 30, 2025). As a result of the amendment, "courts have determined that there is, at the very least, ambiguity as to whether § 1102.5 permits individual liability—an uncertainty that ought to be resolved in favor of Plaintiff" on a motion to remand. *Id*. (citations omitted).

Defendants argue that since the amendment, many district courts have found that the statute *does not* impose individual liability and therefore Plaintiff's claims against Mr. Stafford are precluded. (Doc. 1 at 14). "Indeed . . . '[t]he overwhelming majority of district courts addressing the merits have found that even after the amendment, § 1102.5 does not impose individual liability on non-employers." *Shipp*, 2025 WL 1248745, at *3 (citations omitted); *see e.g.*, *Bales*, *v. County of El Dorado*, No. 2:18-cv-01714-JAM-DB, 2018 WL 4558235, at *2–3 (E.D. Cal. Sept. 20, 2018) (collecting cases). For instance, in *Tillery*, this Court used "its best judgment to predict how the highest state court would resolve the issue" because the California Supreme Court had not addressed this precise issue. *Tillery v. Lollis*, No. 1:14-cv-02025-KJM-BAM, 2015 WL 4873111, at *10 (E.D. Cal. Aug. 13, 2015). This Court explained that consistent with California Supreme Court jurisprudence interpreting similar statutes under FEHA[2], § 1102.5 cannot reasonably be read to impose individual liability post-amendment. *Id*. at *9–10 ("The language of the statute on which plaintiff relies does not include clear language imposing individual liability, but rather uses the kind of language consistently associated with imposition of liability on an employer alone"). This Court also found that the "legislative history of the recent amendment [did] not suggest otherwise . . ." *Id*. at *10.

However, these decisions have all resolved merit-related motions, such as a motion to dismiss, which require the court to employ a legal standard that is distinct from the more demanding jurisdictional standard used to assess fraudulent joinder on removal. *Moren v. National Express Transit, Inc.*, No. 1:21-cv-01206-AWI-JLT, 2021 WL 5602820, at *3 (E.D. Cal. Nov. 30, 2021) (rejecting the same argument). As the Ninth Circuit explained, though the

---

[2] *See Reno v. Baird*, 18 Cal. 4th 640, 645 (1998); *Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1162 (2008).

Federal Rule of Civil Procedure 12(b)(6) shares some similarities with the fraudulent joinder standard, the two tests are not equivalent and should not be conflated. *Grancare, LLC*, 889 F. 3d at 549. "A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." *Id*.

Instead, in the context of motions to remand based on fraudulent joinder of individual defendants, "more than a dozen courts . . . have determined that state law is unsettled following the 201[4] amendment, such that 'as a matter of state law, it is not obvious whether a defendant can or cannot be found personally liable under § 1102.5.'" *Shipp*, 2025 WL 1248745, at *3 (citing *Dawson v. Caregard Warranty Serv., Inc.*, No. 23-cv-01139-SB-SP, 2024 WL 661198, at *1, 2 (C.D. Cal. Jan. 12, 2024)); *Moren*, 2021 WL 5602820, at *2 (collecting cases). "Neither the California Supreme Court nor any intermediate appellate court appears to have considered whether the 201[4] amendment expands liability for violations of § 1102.5 to permit claims for money damages against individual non-employers."[3] *Shipp*, 2025 WL 1248745, at *3.

Defendants cite a series of California Superior Court decisions which hold that the amended version of § 1102.5 does not impose individual liability. (*See* Doc. 13 at 22–23 (citing a series of cases). However, many of these cases acknowledge the lack of binding California authority and rely on the California Supreme Court decisions in *Reno*, 18 Cal. 4th at 645, and *Jones*, 42 Cal. 4th at 1162, which interpreted statutory provisions under FEHA, not under Cal. Lab. Code § 1102.5 post-amendment. (*See* Doc. 13 at 22–23; *see also* Doc. 13-1 at 12, 21, 29–31). Furthermore, California "[t]rial court decisions are not precedents binding on other courts under the principle of stare decises." *Harrott v. County of Kings*, 25 Cal. 4th 1138, 1148 (2001) ("While the superior court in which he brought it could follow the *Harrott* superior court, it would not have to. It would be free to reach the opposite conclusion . . .").

Considering the lack of binding California authority coupled with the more demanding

---

[3] This Court explained in *Shipp* that "[t]he only California authority located by the court since the [January 2024] district court decision in *Dawson*[,] [2024 WL 661198, at *1, 2] that is even marginally relevant is *Doutherd v. United Parcel Service, Inc.*, No. H050702, 2024 WL 4941033, at *12 (Cal. Ct. App. Dec. 2, 2024). In that unpublished decision, the California Court of Appeal found that the plaintiff had 'not provided any authority for his conclusory assertion that an individual human resources employee may be held liable for violation of' § 1102.5 and had therefore 'forfeited the issue.'" *Shipp*, 2025 WL 1248745, at *3 n.3.

7

legal standard at this posture, the Court cannot find that there is *no possibility* of prevailing on this claim. *See Grancare, LLC*, 889 F.3d at 548 (explaining that there is a general presumption against finding fraudulent joinder); *Siufanua v. Marathon Refin. Logistics Servs., LLC*, No. 2:24-cv-08768-SPG-JPR, 2025 WL 478405, at *3, 4 (C.D. Cal. Feb. 11, 2025) ("The statutory ambiguity of section 1102.5 is enough to offer a 'glimmer of hope' [to] Plaintiff . . . This action is remanded to the Los Angeles County Superior Court."); *Shipp*, 2025 WL 1248745, at *3 ("The court agrees with the many district courts that have found that it is not settled state law whether or not a plaintiff may bring a § 1102.5 [claim] against individual defendants."). Thus, Defendants fail to establish diversity of citizenship due to the lack of complete diversity. Consequently, the Court need not address amount in controversy.

### B.   Federal Question Jurisdiction & Preemption Under the LMRA

In the alternative, Defendants argue that claims two, three, and four are preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), because such claims require an interpretation of the terms of the CBA and therefore provide a basis for federal question jurisdiction. (Doc. 1 at 4–11; Doc. 13 at 8–17.) The Court disagrees and finds that Plaintiff's claims are not preempted because (1) they arise from rights conferred by state law which are independent of the CBA and (2) they can be resolved without interpreting the terms of the CBA.

"The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule', which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The plaintiff is the "master of the claim" and may avoid federal jurisdiction by "exclusive reliance on state law." *Id*. "[H]owever, a state common law claim will be converted into one stating a federal claim where the preemptive force of a federal statute is so extraordinary that it displaces any state law claim in the area. Complete preemption applies to cases raising claims preempted by § 301." *Audette v. Int'l Longshoremen's and Warehousemen's Union*, 195 F.3d 1107, 1111 (9th Cir. 1999). Under §301 of the LMRA,

> Suits for violation of contracts between an employer and a labor

organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

29 U.S.C. § 185(a).

"Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc.*, 482 U.S. at 393. "This is true even in some instances in which the plaintiffs have not alleged a breach of contract in their complaint, if the plaintiffs' claim is either grounded in the provisions of the labor contract or requires interpretation of it." *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). However, "not every dispute . . . tangentially involving a provision of a [CBA] is preempted by § 301." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).

To determine whether the LMRA preemption applies, courts first assess "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Burnside*, 491 F.3d at 1059. "If the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there." *Id.* (citing *Allis-Chalmers Corp.*, 471 U.S. at 212 (explaining that section 301 cannot "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract")). If, however, the right exists independently of the CBA, courts then assess whether such rights are "substantially dependent on an analysis of a collective bargaining agreement." *Id.* (citing *Caterpillar, Inc.*, 482 U.S. at 394). "If such dependence exists, then the claim is preempted . . .; if not, then the claim can proceed under state law." *Id.* at 1059–60. Because all relevant claims arise under state law, this Court proceeds directly to step two regarding whether such rights are "substantially dependent" on an interpretation of the CBA.

      1.  <u>FEHA Failure to Accommodate Conditions Related to Pregnancy</u>

Plaintiff's second cause of action alleges failure to accommodate conditions related to pregnancy under FEHA Cal. Gov. Code § 12945. (Doc. 1-2 at 13.) Specifically, Plaintiff alleges

9

that Defendant Saputo failed to provide adequate accommodations by (1) refusing to provide a lactation room for her to express milk at work; and (2) failing to provide a maternity-sized uniform. (*Id*.) The Court finds that this claim does not require an interpretation of the CBA.

Defendants argue that to resolve this claim, two provisions of the CBA must be interpreted. (*See* Doc. 13 at 14, 16–17.) First, Defendants point to the ADA provision in the contract which states:

> The parties recognize the Company's right to make such job changes that are reasonably necessary and to take such other actions that may be required to insure that the Company continues to be in compliance with the American with Disabilities Act (ADA), and the regulations issued thereunder. The Company will agree to meet with the Union and discuss the impact of any requested ADA accommodations in order to determine whether they can be granted without violating other employee's seniority rights.

(Doc. 1-3 at 21.) Second, Defendants point to the Uniform provision in the contract which states: "If the Employer requires its employees to wear a uniform, the Employer shall furnish and launder such uniforms." (Doc. 1-3 at 14.)

As to the ADA provision, Defendants argue that various aspects of this provision will require interpretation, including "whether Plaintiff's condition falls within the scope of this clause, whether the change in Plaintiff's shift in light of her pregnancy and accompanying requested accommodations made the change in Plaintiff's shift 'reasonably necessary,' and whether Defendant's decision to change Plaintiff's shift was based on the legitimate, non-discriminatory . . . basis." (Doc. 13 at 14.)

This argument is unpersuasive for two reasons. First, there is no evidence that Plaintiff requested an accommodation under the ADA that would have impacted another employee's seniority rights. (*See* Doc. 1-2 at 9–11.) She requested only an adequate lactation room and maternity-sized pants, which does not affect the seniority rights of other employees. (*Id*. at 9–11, 13.) Further, even if this provision was intended to control all accommodation requests, that is insufficient to preempt Plaintiff's claim. *Ibarra v. Toyota Logistics Services, Inc.*, No. 2:23-cv-03170-FLA (MARx), 2024 WL 1356660, at *3 (C.D. Cal. Mar. 29, 2024) ("The fact that the CBA may have provided accommodations contractually . . . is insufficient to establish that

10

interpretation of those provisions is necessary to resolve Plaintiff's separate, nonnegotiable state-law rights under the FEHA."). Second, to the extent Defendants argue that Plaintiff's condition as a post-partum, nursing mother justified her reassignment to the night shift to "insure . . . compliance with the ADA," it is unclear how that would be the case.[4] (*See* Doc. 1-3 at 21); *see also Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 692 (9th Cir. 2001) ("A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility.").

Furthermore, the factual allegations at issue here do not require interpretation of the CBA. The failure to provide an adequate lactation room to express milk (Doc. 1-2 at 13), is a right conferred by Cal. Lab. Code §1031 and is not mentioned in the CBA. (*See* Doc. 13 at 11–17.) Additionally, the failure to provide maternity-sized uniform (Doc. 1-2 at 13), is a right conferred by Cal. Code Regs. tit. 8, § 11080. Defendants argue that this issue requires an interpretation of the CBA's uniform provision and asserts that "the uniform policy . . . may come into play while evaluating whether Defendants had a legitimate business reason for its conduct." (Doc. 13 at 17.) Specifically, whether the one-month delay in providing maternity-sized uniform pants was compliant with Defendants' contractual obligation to "furnish" such uniforms. (Doc. 1 at 10.)

However, this would at most require "looking to" the CBA, not interpreting it. *Burnside*, 491 F.3d at 1071 (drawing a distinction and explaining that claims which can be resolved by "looking to" relevant CBA provisions are not preempted by section 301). As Plaintiff notes, (Doc. 8 at 8), the CBA simply reiterates the same requirements enumerated in California's Wage Order, which provides: "When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer." Cal. Code Regs. tit. 8, § 11080(9). "[A]t best, [this provision] merely confirm[s] that [it] confer[s] upon employees the same right already conferred upon them by state law." *Burnside*, 491 F.3d at 1071. The CBA provision provides no further guidance regarding Defendants' one-month delay in furnishing the maternity-sized uniform. *See id*. (explaining that the provisions at issue provide

---

[4] Moving the Plaintiff to the night shift would not have solved Plaintiff's pregnancy-related accommodation requests, especially because the training room—which served as the main lactation room—closed after 5 p.m. and would have been less accessible at night. (*See* Doc. 1-2 at 10.)

even less fodder for interpretation, as they do not even broach the subject of compensation for compulsory travel time). Instead, the two rights underlying the second cause of action are "nonnegotiable state-law rights separate from any contractual rights Plaintiff may have additionally obtained through the CBA." *Ibarra*, 2024 WL 1356660, at *2 (finding that plaintiff's FEHA claim regarding failure to reasonably accommodate a physical disability was not preempted) (citations omitted). Thus, claim two is not preempted.

### 2.   FEHA Discrimination on the Basis of Sex

Plaintiff's third cause of action alleges discrimination on the basis of sex under FEHA Cal. Gov. Code § 12940. (Doc. 1-2 at 14.) Specifically, Plaintiff alleges that Defendant Saputo discriminated against her as a pregnant women by (1) refusing to provide a lactation room for her to express milk at work; (2) failing to provide a maternity-sized uniform; (3) worsening the conditions of her employment by moving her to the night shift involuntarily and calling her "useless"; and (4) constructively terminating her, all on account of her pregnancy-related accommodation requests. (*Id*.) The Court finds that this cause of action is not substantially dependent on and does not require an interpretation of the CBA to resolve.

Generally, the Ninth Circuit has held that state law discrimination claims under FEHA do not require courts to interpret the terms of a CBA and therefore are not preempted by § 301. *Klausen v. Warner Bros. Television*, 158 F. Supp. 3d 925, 930 (C.D. Cal. Jan. 25, 2016) (collecting cases); *Bachilla v. Pacific Bell Telephone Co.*, No. S-07-739-RRB-KJM, 2007 WL 2825924, at *7 (E.D. Cal. Sept. 25, 2007) (collecting cases); *see e.g., Ackerman v. W. Elec. Co.*, 860 F.2d 1514, 1517 (9th Cir. 1988) (finding no § 301 preemption of FEHA disability discrimination claim because rights against discrimination based on handicap status is "defined and enforced under state law without reference to the terms of any [CBA]"). However, there are some exceptions. *Bachilla*, 2007 WL 2825924, at *7 (citations omitted). Relevant here are the two cases that have found LMRA preemption of certain sex discrimination claims. *See Audette*, 195 F.3d at 1110, 1113; *Bachilla*, 2007 WL 2825924, at *7–9.

In *Audette*, the plaintiffs filed a discrimination claim against their employer and union alleging they had been denied B-registration, a specific work category designation, on account of

gender. *Audette*, 195 F.3d at 1113. Notably, the underlying issue involved the right to be classified as a B-worker—a right which had been expressly bargained for and obtained through the CBA. *Id*. at 1110 ("The CBA regulates the terms, conditions, and procedures for longshore work categories-casuals, identified casuals, B registered workers, and A registered workers."). Written into the agreement was employee Huntsman's right to request B-registration on behalf of herself and other casual workers. *Id*. Upon such request, the labor relations committee would then have to "request B Registration" or "present in writing . . . non-discriminatory, legitimate, business justification why the B Registration should not take place." *Id*. Accordingly, the Ninth Circuit found that resolution of these claims required an interpretation of the CBA. *Id*. at 1113 ("The instant case does not involve a free-standing claim of discrimination. Rather the claim turns on whether defendants' alleged failure to perform the settlement agreement was motivated by retaliation or discrimination . . . Here, resolution of the discrimination and retaliation claim turns on defendants' offer of a 'legitimate nondiscriminatory reason' requiring interpretation of the [CBA]").

Relying on *Audette*, this Court in *Bachilla* similarly found that plaintiffs' FEHA sex discrimination and retaliation claims were preempted by the LMRA. *Bachilla*, 2007 WL 2825924, at *7–9. The plaintiffs alleged gender discrimination when their employer promoted less-senior male coworkers instead of them in violation of the CBA. *Id*. at *1 ("The CBA governs the terms and conditions of Plaintiffs' employment, including promotions and transfers based on seniority."). That lead to the filing of grievances and an eventual settlement agreement which offered the female workers a different position on a "now or never" basis with terms defendants knew would be unacceptable. *Id*. Eventually, the plaintiffs filed suit against their union and employer, alleging in relevant part, sex discrimination and retaliation. *Id*. at 2. This Court found that plaintiffs' claims were preempted "to the extent" they are "premised on [the employer's] promotion of less senior male coworkers in violation of its seniority policy." *Id*. at 8. This Court explained, "[t]his claim cannot be evaluated without interpreting the seniority provisions of the CBA since the terms of Plaintiffs employment, including their eligibility for a promotion and/or transfer, are governed by the CBA." *Id*.

13

However, the present case does not involve promotions or transfers which require an interpretation of a seniority policy in the CBA.[5] *Cf.*, *Bachilla*, 2007 WL 2825924, at *7–9. Plaintiff only alleges that she was "banished to the night shift" after making pregnancy-related accommodation requests and complaints, (Doc. 1-2 at 10–11, 14–15), but never claims to have been denied a promotion in favor of a less-senior employee, or to have been demoted in favor of a more-senior employee. (*See id*.) Nor does the present case involve rights and defenses arising from the CBA. *Cf., Audette*, 195 F.3d at 1110 (involving an employee's bargained-for right to B-registration classification and defendants' written non-discriminatory rationale for denying such requests under the CBA). Instead, this case involves rights and violations related to pregnancy arising under state law. *See* Cal. Gov. Code § 12945(a)(1); Cal. Gov. Code §12940(a).

Defendants argue that the CBA's job-bidding provisions require interpretation to settle this dispute. (Doc. 13 at 11–13.) Namely, Defendants point to the following provision in the CBA:

> In the event an employee is *off work due to a disability or sickness* more than 90 days, their job may be put up for bid.
>
> If the employee that is *off work* for more than nine (9) months *due to the disability* returns to work within one year he/she shall move to worker pool. All employees moved due to this vacancy shall return to previous jobs and restore bid rights.

(Doc. 1-3 at 23 (emphasis added).)

The Court disagrees. The factual allegation which underlies Plaintiff's sex discrimination claim—her transfer to the night shift—does not require an interpretation of the CBA. Though it involves a provision in the CBA regarding medical/disability leaves of absences, the court can resolve the issue by merely "looking to" the contract. *See Burnside*, 491 F.3d at 1060 (citing

---

[5] For the same reason, this Court rejects Defendants reliance on *Van Scoy* and *Greenly*, as those cases also involved promotions and demotions which required interpretation of a CBA seniority policy. (Doc. 13 at 11–13); *see Van Scoy v. New Albertson's Inc.*, No. 2:08-cv-02237-MCE-KJM, 2010 WL 5168787, at *2 (E.D. Cal. Dec. 13, 2010) ("[P]laintiffs' discrimination claims were predicated, at least in part, on defendant's promotion of other individuals. That implicated the terms of the CBA, since defendants' assertion that the promotions were valid could not be interpreted without evaluating the seniority provisions of the CBA."); *Greenly v. Sara Lee Corp.*, No. S-06-1775-WBS-EFB, 2006 WL 3716769, at *4 (E.D. Cal. Dec. 15, 2006) (explaining that plaintiff's claim regarding emotional distress turned on allegations that he was "denied promotions," and was "demoted in retaliation for his complaints" which required interpretation of CBA provisions regarding "seniority in promotions.").

*Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994) (explaining that the "simple need to refer to bargained-for wage rates in computing [a] penalty" is not enough to warrant preemption)). Here, the application of the CBA provision to Plaintiff's sex discrimination claim is merely a factual inquiry as to whether Plaintiff was "off work due to a disability or sickness more than 90 days" or was "off work for more than nine (9) months due to the disability [and] return[ed] to work within one year." (*See* Doc. 1-3 at 23.) If the answer is yes, then Defendants presumably have a legitimate basis for reassigning her to the night shift upon placing her job "up for bid" or moving her to the "worker pool." (*Id*); *Burnside*, 491 F.3d at 1072 ("The need for a 'purely factual inquiry . . . [that] does not turn on the meaning of any provision of a [CBA],' . . . is not cause for preemption under section 301).

This is not a situation where the *meaning* of contract terms is the subject of dispute. *See Livadas*, 512 U.S. at 124 ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."); *cf. Armstrong v. WB Studio Enterprises, Inc., et al.*, No. CV 19-9587-GW-JPRx, 2020 WL 1967566, at *4 (C.D. Cal. 2020) (explaining that since the discrimination and retaliation claim turned on defendant's refusal to rehire the plaintiff, such claim required an interpretation of plaintiff's qualifications for that specific role under the terms of the CBA); *cf. Madison v. Motion Picture Set Painters & Sign Writers Local 729*, 132 F. Supp. 2d 1244, 1253 (C.D. Cal. 2000) (explaining that since the discrimination claim turned on plaintiff's allegations that the grievance procedure was handled differently with him—namely, the union never notified him before submitting a meritless grievance on his behalf and against his employer—"this fact may necessitate determining whether the CBA imposed an obligation on the Union to notify interested members before proceeding with [] a claim"). Accordingly, claim three is not preempted.

### 3. Whistleblower Retaliation on the Basis of Sex

Plaintiff's fourth cause of action alleges whistleblower retaliation under Cal. Lab. Code § 1102.5. (Doc. 1-2 at 15.) Plaintiff alleges that Defendants retaliated against her by worsening the conditions of her employment, namely, by moving her to the night shift involuntarily and calling

her "useless." (*Id.*) Plaintiff claims that the retaliation occurred "all on account of her reporting of and opposition to Defendants' failures to" provide adequate pregnancy accommodations. (*Id.*) In so far as this claim turns on Defendants' decision to "banish" or reassign the Plaintiff to the night shift in retaliation for her pregnancy-related accommodation requests, this Court similarly finds that the claim is not preempted.

As explained above, the CBA job-bidding provision stating that an employee's job may be put up for bid "[i]n the event an employee is off work due to a disability or sickness," (Doc. 1-3 at 23), at most requires a factual inquiry into whether Plaintiff was off work for more than 90 days or more than nine months. *Burnside*, 491 F.3d at 1072 ("The need for a 'purely factual inquiry . . . [that] does not turn on the meaning of any provision of a [CBA],' . . . is not cause for preemption under section 301). If yes, then that may provide a logical explanation for Defendants' conduct in reassigning Plaintiff to the night shift and may indicate the lack of retaliatory motive. However, that does not mean that the *meaning* of this contract term is at issue or that this CBA provision preempts Plaintiff's retaliation claim.[6] *See Sellar v. Woodland Park Zoological Soc'y*, No. 2:23-cv-00627-TL, 2023 WL 5425490, at *5 (W.D. Wash. Aug. 23, 2023) ("Determining whether the Zoo undertook discriminatory or retaliatory actions will, instead, likely focus on 'purely factual questions pertain[ing] to . . . the conduct and motivation' of the Zoo, not disputed terms of the CBA.") (citations omitted); *Livadas*, 512 U.S. at 124 ("[W]hen the meaning of contract terms is

---

[6] Defendants argue that "Plaintiff . . . raises the misplaced argument that Defendant cannot use the substance of its defense to engineer a federal question. . . Plaintiff's citation to *Burnside* has absolutely no application or relevance to Defendant's basis for removal . . . because those arguments apply to the first step of the *Burnside* test, which is not at issue here." (Doc. 13 at 16.) However, it is unclear whether *Burnside* stands for such proposition. Though under step one of its analysis, *Burnside* explained that "reliance on the CBA as an aspect of a defense is not enough to 'inject[] a federal question into an action that asserts what is plainly a state-law claim." 491 F.3d at 1060. Nonetheless, many courts in this circuit have found that "preemption cannot arise out of a defense requiring interpretation of the CBA." *See Sellar*, 2023 WL 5425490, at *5, 6 (finding no preemption of plaintiff's claims under step two of the *Burnside* test); *Martinez v. Kaiser Found. Hosps.*, No. C12-1824, 2012 WL 2598165, at *4 (N.D. Cal. July 5, 2012) (finding no reliance on the CBA where defendant was essentially arguing it had a legitimate nondiscriminatory reason, i.e., "just cause," for its conduct, which was impermissible basis for preemption); *Ku v. Argent Hotel Mgmt., LLC*, No. 20-cv-05026-LB, 2020 WL 5836506, at *4 (N.D. Cal. Oct. 1, 2020) ("The claims here turn on resolution of the employer's motives, not on an interpretation of the CBA (even if those terms identify the terms of employment).") In any event, the Court re-emphasizes that examining whether Defendants' conduct was justifiable in this case is a fact-specific inquiry that does not depend on an interpretation of the CBA.

16

not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.")

Defendants also point to the overtime provision in the CBA as requiring an interpretation to resolve Plaintiffs' retaliation claims. (*See* Doc. 13 at 15–16.) That provision states:

> Daily overtime shall first be offered to the employee performing the work on that shift.
>
> If the employee performing the work declines the overtime work, the overtime will be offered to senior qualified employee in that classification on that shift.
>
> If the senior qualified employee in that classification declines the overtime work, the overtime will be offered to the senior qualified employee in any classification on that shift.
>
> If all qualified employees decline the overtime work, the overtime work shall be assigned to the least senior qualified employee on that shift, who has not worked twelve (12) hours of mandatory overtime that week.

(Doc. 1-3 at 10.) In her complaint, Plaintiff alleged that during her second pregnancy while employed with Saputo, she was medically unable to work overtime, and when her supervisor learned of this restriction, he called her "useless." (Doc. 1-2 at 11.) Defendants argue that "[w]hether Plaintiff was a 'qualified employee' under this provision and the impact of her alleged restriction from overtime work, will be inevitably intertwined with the CBA." (Doc. 13 at 16.) Defendants explain that if the phrase qualified employee "has been interpreted and applied by Defendants to exclude employees who are unable to work overtime for medical reasons, such evidence would cut against Plaintiff's assertion that her inability to work overtime . . . formed the basis for discriminatory animus against her." (*Id.*)

This argument is unpersuasive. Defendants seem to suggest that there would be no reason to make derogatory remarks against the Plaintiff if she was medically exempt from working overtime. However, the facts as alleged is that Plaintiff's supervisor called her "useless" when she told him she was medically unable to work overtime. Irrespective of whether Plaintiff was exempt from this provision, the employer would not be justified in making such derogatory remarks. At most, this would involve a factual inquiry into the supervisor's motives behind making the comment, "not on an interpretation of the CBA." *See Ku v. Argent Hotel Mgmt., LLC*, No. 20-cv-

05026-LB, 2020 WL 5836506, at *4 (N.D. Cal. Oct. 1, 2020). Accordingly, claim four is not preempted. In sum, Defendants fail to establish a basis for federal question jurisdiction.

## IV.    CONCLUSION AND ORDER

For the reasons set forth above, the Court **ORDERS**:

1. Plaintiff's motion to remand (Doc. 7) under 28 U.S.C. § 1447(c) is **GRANTED**.

2. The Clerk of Court is directed to remand this case to the Tulare County Superior Court.

IT IS SO ORDERED.

Dated:    **March 30, 2026**

UNITED STATES DISTRICT JUDGE